UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Kevin Jordan, individually and on behalf of all others similarly situated,<br><br>                            Plaintiff,<br><br>            - against -<br><br>The Coca-Cola Company,<br><br>                            Defendant | Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.      The Coca-Cola Company ("Defendant") manufactures, packages, labels, markets, and sells piña colada flavored soda purporting to have "100% Natural Flavors" under the Fanta brand ("Product").




2. However, the representations are false, deceptive, and misleading because the Product contains DL-Malic Acid, an artificial ingredient which imparts the flavor of pineapple and coconut.

## I. CONSUMER DEMAND FOR NATURAL FLAVORS

3. Consumers are increasingly concerned about the ingredients they eat and drink.

4. Surveys have shown that consumers are less likely to buy beverages, even sodas, which have artificial ingredients.

5. Within the spectrum of artificial ingredients, consumers are especially focused on, and seek to avoid, artificial flavors, and seek products with only natural flavors.

6. The representation that the Product has "100% Natural Flavors" appeals to the more than seven out of ten consumers who avoid artificial flavors, as these synthetic ingredients are believed to be associated with detrimental health and environmental effects. [1]

7. Natural flavor is defined as "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents" from fruits or vegetables, "whose significant function in food is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

8. Artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

9. According to the Wall Street Journal, "As consumer concern rises over artificial

---

[1] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[2]

10. According to Paul Manning, chief executive officer and president of Sensient Technologies, "Consumer desire for naturally flavored products is an emerging trend."[3]

11. Explanations for why consumers prefer foods containing natural, instead of artificial flavors, are varied.

12. A recent survey reported that over 82% of US respondents believe that foods with artificial flavors are less healthy than those promoted as containing natural flavors and/or not containing artificial flavors.

13. Consumers seek to avoid artificial flavors because they are weary of ingredients which are highly processed with chemical additives and synthetic solvents in laboratories.

14. According to Nielsen, the absence of artificial flavors is very important for over 40% of respondents to their Global Health & Wellness Survey.

15. One scholar theorized "the preference for natural products appeals to a moral ideology and offers a moral satisfaction."[4]

16. The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors & Ingredients" as bleak, given consumer opposition to these synthetic ingredients.[5]

17. Mintel announced that consumer avoidance of artificial flavors is just as strong as their desire for natural flavors, in its Report, "Artificial: Public Enemy No. 1."[6]

18. About half of Americans say they seek out natural flavors at least some of the time.

---

[2] Lauren Manning, How Big Food Is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.
[3] Keith Nunes, Using natural ingredients to create authentic, fresh flavors, Food Business News, Sept. 20, 2018.
[4] Rozin, P., Spranca, M., Krieger, Z., Neuhaus, R., Surillo, D., Swerdlin, A., & Wood, K. (2004). Preference for natural: Instrumental and ideational/moral motivations, and the contrast between foods and medicines. Appetite, 43(2), 147–154.
[5] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.
[6] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

19. In contrast, artificial flavors were sought out by only about one in 10 consumers, with approximately half saying they avoid each of them at least some of the time.

20. Nielsen reported that 62% of consumers try to avoid artificial flavors.

21. New Hope Network concluded that 71% of consumers avoid artificial flavors.

22. Label Insight determined that 76% of consumers avoid artificial flavors.

23. A recent survey shows more than three in four people worldwide are convinced that artificial flavors have no place on their ingredient lists.[7]

24. According to Forbes, 88% of consumers consider foods without artificial flavors to be more natural and healthier than foods with artificial flavors and would pay more for such foods.

## II. MALIC ACID

25. A flavor is a substance that imparts taste. See 21 C.F.R. § 101.22(a)(1) and (3).

26. Taste is the combination of sensations from receptor cells in the mouth.[8]

27. These sensations include sweet, sour, salty, bitter, and umami.

28. However, limiting taste to five categories suggests taste is simple, which is not true.

29. For example, the taste of sour includes the vinegar (acetic acid), sour milk (lactic acid), lemons (citric acid), apples (malic acid), and wines (tartaric acid).

30. Each of those acids is responsible for unique sensory characteristics of sourness.

31. Fruit flavors are the sum of the interaction between sugars, acids, and volatile compounds.[9]

32. Consumer acceptability of the flavor of pineapple and coconut are based on their perceived sweetness and tartness, determined by their sugar-to-acid ratio.

---

[7] What 'Natural' Really Means to Consumers GNT Group's Guide to Global Consumer Demands attests importance of natural colors for future-proof products, July 13, 2017.
[8] Gary Reineccius, Flavor Chemistry and Technology § 1.2 (2d ed. 2005).
[9] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).

4

33. These sugars are mainly glucose and fructose, while the acids are mainly malic acid and citric acid.

34. In coconut and pineapple, malic acid and citric acid are the first and second predominant acids.

| Fruit | First Predominant Acids | Second Predominant Acids |
|---|---|---|
| Apple | Malic Acid (95%) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%) | Citric Acid, Tartaric Acid |
| Blackberry | Citric Acid | Malic Acid |
| Blueberry | Citric Acid | Malic Acid, Quinic Acid |
| Cherry | Malic Acid (94%*) | Tartaric Acid |
| Cherry (Tropical) | Malic Acid (32%) | Citric Acid |
| Coconut | Malic Acid | Citric Acid |
| Grape | Malic Acid (60%*) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Kiwi | Quinic Acid, Citric Acid | Malic Acid |
| Lime, Lemon | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%) | Citric Acid |
| Pear | Malic Acid (77%) | Citric Acid |
| Pineapple | Citric Acid (60%) | Malic Acid (40%) |
| Pomegranate | Malic Acid (>50%) | Citric Acid (>22%) |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry | Citric Acid | Malic Acid, Tartaric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%) | Fumaric Acid |

35. In pineapples, malic acid provides its characteristic sour flavor.

36. In coconuts, malic acid provides the characterizing sweetness and tanginess.

37. In both of these tropical fruits, malic acid is central to their characteristic fruity and

5

### III. CHEMICAL STRUCTURE OF MALIC ACID

38. Malic acid (molecular formula C4H6O5) is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid.

39. Malic acid has two isomers, or arrangements of atoms, L-malic acid, and D-malic acid. 21 C.F.R. § 184.1069.

40. An isomer is a molecule sharing the same atomic make-up as another but differing in structural arrangements.[10]

41. Stereoisomers differ by spatial arrangement, meaning different atomic particles and molecules are situated differently in any three-dimensional direction.

42. An enantiomer is a type of stereoisomer and like right and left-hand versions of the same molecular formula.

43. D-malic acid and L-malic acid are enantiomers with almost identical skeletal formulas.



44. L-malic acid occurs naturally in fruits such as pineapple and coconut, and is known for providing sweetness, tanginess, and tartness.

---

[10] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

45. D-malic acid does not occur naturally and is most commonly found as a racemic mixture of the D and L isomers, or DL-malic acid.

46. DL-malic acid is synthetically produced from petroleum in a high-pressure, high-temperature, catalytic process involving chemical reactions and reagents.

### IV. "100% NATURAL FLAVORS" IS MISLEADING

47. Federal and identical state regulations prohibit misleading statements on food products and require the Product to disclose the source of its characterizing piña colada or pineapple and coconut flavor, which it does through the statement of "Piña Colada Flavored Soda With Other Natural Flavors." 21 C.F.R. § 101.22(i).




48. Consumers viewing the statements of "100% Natural Flavors" and "Piña Colada Flavored Soda With Other Natural Flavors" will expect the Product's taste is from natural flavoring ingredients.

49. However, consumers are misled because the Product contains the artificial ingredient of "Malic Acid," which provides its pina colada or pineapple and coconut taste.

7

> CARBONATED WATER, HIGH FRUCTOSE CORN SYRUP, NATURAL FLAVORS, MALIC ACID, MODIFIED FOOD STARCH, POTASSIUM SORBATE AND SODIUM BENZOATE (TO PROTECT TASTE), SUCROSE ACETATE ISOBUTYRATE, GLYCEROL ESTER OF ROSIN, CITRIC ACID.

CARBONATED WATER, HIGH FRUCTOSE CORN SYRUP, NATURAL FLAVORS, MALIC ACID, MODIFIED FOOD STARCH, POTASSIUM SORBATE AND SODIUM BENZOATE (TO PROTECT TASTE), SUCROSE ACETATE ISOBUTYRATE, GLYCEROL ESTER OF ROSIN, CITRIC ACID.

50.  That this malic acid was the artificial version is not disclosed to consumers on the ingredient list, but was determined through laboratory analysis performed by accepted standards.

51.  The Product could have used natural flavoring alternatives such as L-malic acid from pineapple, coconuts or other fruits, a natural version of citric acid, or natural pineapple and coconut flavors.

52.  Instead, the Product used artificial DL-Malic Acid because it cost less and/or more accurately resembled the taste of pineapple and coconut.

53.  DL-Malic Acid is not a "natural flavor" as defined by federal and state regulations, because it is not from a fruit, vegetable or other natural source, nor is it made through a natural process.

54.  The taste of piña colada, a combination of pineapple and coconut, is a result of the balance between these fruits' natural sugars of glucose, fructose, and sucrose, combined with their most significant fruit acids, which includes L-malic acid.

55.  The natural flavors of pineapple and coconut are heavily dependent on specific ratios of sugar and L-Malic Acid, while the Product's flavors depend upon a ratio of sugar and DL-Malic

Acid.

56. DL-malic acid is central to the taste of pineapple and coconut, which is why its use in the Product goes beyond enhancing or improving its core pineapple and coconut taste. 21 C.F.R. § 170.3(o)(11).

57. DL-malic acid is not added to change or maintain the Product's active acidity or basicity because it is a highly acidic carbonated beverage. 21 C.F.R. § 170.3(o)(23).

58. Since malic acid is central to the taste of coconuts and pineapples, adding artificial DL-malic acid imparts the fruity, tangy, and sweet flavor attributes these fruits, and when combined, a pina colada, is known for.

59. Since the Product contains DL-Malic Acid that imparts the flavor of a piña colada, pineapple and coconut, "100% Natural Flavors" is false and misleading.

60. Federal and identical state regulations require that instead of "Piña Colada Flavored Soda With Other Natural Flavors," piña colada must "be accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Piña Colada Flavored Soda" or "Artificially Flavored Piña Colada Soda." 21 C.F.R. § 101.22(i)(2).

**V. CONCLUSION**

61. The Product contains other representations which are false and misleading.

62. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $2.29 for 20 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

9

## Jurisdiction and Venue

63. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

64. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

65. Plaintiff is a citizen of Missouri.

66. Defendant is a Delaware corporation with a principal place of business in Georgia.

67. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

68. The members of the classes Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here from thousands of locations including grocery stores, dollar stores, drug stores, convenience stores, big box stores, and/or online, across the States covered by Plaintiff's proposed classes.

69. Venue is in this District with assignment to the Eastern Division because a substantial part of the events or omissions giving rise to the claims occurred in Saint Louis County, including Plaintiff's purchase and consumption of the Product and awareness and/or experiences of and with the issues described here.

## Parties

70. Plaintiff Kevin Jordan is a citizen of Hazelwood, Missouri, Saint Louis County.

71. Defendant The Coca-Cola Company is a Delaware corporation with a principal place of business in Atlanta, Georgia, Fulton County.

72. Fanta was first made in Europe during the Second World War by The Coca-Cola Company's European divisions.

73. The version of Fanta sold today is based on the Fanta that was re-introduced to Italy in the mid-1950s.

74. This soda was unique because it was made with local produce instead of only sugary syrups.

75. Fanta has always been known as a more "natural" and fruit-centric brand of soda than American soda brands, due to its European origins.

76. In the United States, Fanta sodas are based on real fruit flavors, with bright colors from real fruit and natural ingredients.

77. Consumers trust the Fanta brand to be honest with them, because they have built up a reservoir of good will when it comes to fruit-flavored sodas.

78. Plaintiff viewed the label which said "100% Natural Flavors" and expected only natural flavors were responsible for the piña colada or pineapple and coconut taste.

79. Plaintiff is part of the over 70% of consumers who avoid artificial flavors.

80. Plaintiff is part of the over 82% of Americans who believe foods with artificial flavors are less healthy than those containing natural flavors without artificial flavors.

81. Plaintiff is part of the over 40% of consumers identified by Nielsen for whom the absence of artificial flavors is very important.

82. Plaintiff was unable to learn the malic acid listed in the ingredients was the artificial version or that it was used to provide the Product's piña colada (pineapple coconut) taste.

83. Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

11

84. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including QuikTrip near Overland Plaza in 2022, among other times.

85. Plaintiff bought the Product at or exceeding the above-referenced price.

86. Plaintiff paid more for the Product than he would have paid had he known that "100% Natural Flavors" was false and misleading or would not have purchased it.

87. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

88. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes and/or components.

89. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance its representations are consistent with its composition.

90. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar sodas represented as made with only natural flavors, because he is unsure whether those representations are truthful.

Class Allegations

91. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class:

> **Missouri Class**: All persons in the State of Missouri who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Oklahoma, South Dakota and North Dakota who purchased the Product during the statutes of limitations for each cause of action alleged.

92. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled

to damages.

93. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

94. Plaintiff is an adequate representative because his interests do not conflict with other members.

95. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

96. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

97. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

98. Plaintiff seeks class-wide injunctive relief because the practices continue.

Missouri Merchandising Practices Act ("MMPA"),<br>Mo. Rev. Stat. § 407.010, <em>et seq.</em>

99. Plaintiff incorporates by reference all preceding paragraphs.

100. Plaintiff believed the Product's pina colada or pineapple and coconut taste was provided by only natural flavoring.

101. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts<br>(Consumer Fraud Multi-State Class)

102. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

103. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

104. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

105. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that its pina colada or pineapple and coconut taste was provided by only natural flavoring.

106. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

107. Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as beverages with only natural flavorings, and developed its marketing and labeling to directly meet those needs and desires.

108. The representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant that its pina colada or pineapple and coconut taste was provided by only natural flavoring.

109. Defendant affirmed and promised that the Product's pina colada or pineapple and coconut taste was provided by only natural flavoring.

110. Defendant described the Product so Plaintiff and consumers believed its pina colada or pineapple and coconut taste was provided by only natural flavoring, which became part of the basis of the bargain that it would conform to its affirmation and promises.

14

111. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

112. This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Fanta brand, the preeminent seller of natural fruit-flavored sodas.

113. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

114. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

115. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

116. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

117. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on its packaging, container, or label, because it was marketed as if its pina colada or pineapple and coconut taste was provided by only natural flavoring.

118. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected its pina colada or pineapple and coconut taste was provided by only natural flavoring, and he relied on Defendant's skill or judgment to select or furnish such a suitable product.

Negligent Misrepresentation

119. Defendant had a duty to truthfully represent the Product, which it breached.

120. This duty was non-delegable, based on Defendant's position, holding itself out as

having special knowledge and experience in this area, custodian of the Fanta brand, the preeminent seller of fruit-flavored sodas.

121. The representations and omissions took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant, a globally recognized and iconic brand.

122. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchase of the Product.

### Fraud

123. Defendant marketed the Product's pina colada or pineapple and coconut taste as provided by only natural flavoring.

124. Defendant knew that malic acid's function beyond flavoring in other products would allow it to disclaim its role in providing the Product's pina colada or pineapple and coconut taste.

### Unjust Enrichment

125. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Injunctive relief to remove, correct and/or refrain from the challenged practices;
3. Awarding monetary, statutory and/or punitive damages and interest;
4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   January 9, 2023

                                          Respectfully submitted,

                                          /s/ Daniel F. Harvath
                                          Harvath Law Group, LLC
                                          75 W Lockwood Ave Ste 1
                                          Webster Groves MO 63119
                                          (314) 550-3717
                                          dharvath@harvathlawgroup.com