**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| KEVIN JORDAN, *individually and on behalf of all others similarly situated*, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 4:23-cv-00028-SEP |
| THE COCA-COLA COMPANY, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Before the Court is Defendant's Motion to Dismiss, Doc. [8]. The motion is fully briefed and ready for disposition. *See* Docs. [9], [17], [18], [27], [28]. After hearing argument on the motion, the Court dismissed Counts II, III, IV, and VII, and took the remaining claims under advisement. *See* Doc. [26]. For the reasons set forth below, Defendant's motion to dismiss is denied as to the remaining counts.

**FACTS AND BACKGROUND**[1]

Defendant Coca-Cola sells a soda called Piña Colada Fanta ("the Product"). Doc. [1] ¶ 1. The Product's label looks like this:





*Id*. ¶¶ 1, 47. And its ingredients are:

---

[1] For purposes of this motion, the Court assumes that the factual allegations in the Complaint are true. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

1

CARBONATED WATER, HIGH FRUCTOSE CORN SYRUP, NATURAL FLAVORS, **MALIC ACID**, MODIFIED FOOD STARCH, POTASSIUM SORBATE AND SODIUM BENZOATE (TO PROTECT TASTE), SUCROSE ACETATE ISOBUTYRATE, GLYCEROL ESTER OF ROSIN, CITRIC ACID.

*Id*. ¶ 49 (emphasis added). Plaintiff Kevin Jordan has bought the Product at least once since 2022. *Id*. ¶ 84. He alleges that the statements "100% NATURAL FLAVORS" and "PIÑA COLADA FLAVORED SODA WITH OTHER NATURAL FLAVORS" are "misleading because the Product contains DL-Malic Acid, an artificial ingredient which imparts the flavor of pineapple and coconut." *Id*. ¶¶ 1, 2.

Malic acid occurs naturally in many fruits, including pineapple and coconut, but it can also be produced synthetically. *Id*. ¶¶ 34, 44, 46. Naturally occurring malic acid includes only the L-enantiomer and is called L-malic acid. *Id*. ¶ 44. Synthetically produced malic acid includes both the D- and L-enantiomers and is called DL-malic acid. *Id*. ¶¶ 45, 46. Plaintiff alleges that he used "laboratory analysis performed by accepted standards" to determine that the malic acid in the Product is DL-malic acid and, therefore, not natural. *Id*. ¶ 50.

Plaintiff alleges that malic acid provides the "characteristic sour flavor" in pineapples and the "characterizing sweetness and tanginess" in coconuts. *Id*. ¶¶ 35, 36. Because the Product's label indicates that its characterizing flavor is piña colada, "[f]ederal and identical state regulations . . . require the Product to disclose the source of its characterizing piña colada or pineapple and coconut flavor." *Id*. ¶ 47. Specifically, Plaintiff claims that "federal and identical state regulations require that instead of 'Piña Colada Flavored Soda With Other Natural Flavors,' piña colada must 'be accompanied by the word(s) "artificial" or "artificially flavored,"' such as 'Artificial Piña Colada Flavored Soda' or 'Artificially Flavored Piña Colada Soda.' 21 C.F.R. § 101.22(i)(2)." *Id*. ¶ 60. Plaintiff alleges that consumers "viewing the statements of '100% Natural Flavors' and 'Piña Colada Flavored Soda With Other Natural Flavors' will expect the Product's taste is from natural flavoring ingredients," but they will be "misled because the Product contains the artificial ingredient of 'Malic Acid,' which provides its pina colada or pineapple and coconut taste." *Id*. ¶¶ 48, 49. According to Plaintiff, Defendant uses "artificial DL-Malic Acid because it cost[s] less and/or more accurately resemble[s] the taste of pineapple and coconut." *Id*. ¶ 52.

Based on its misleading label, Plaintiff bought the Product for the "premium price" of "no less than $2.29 for 20 oz," which is "higher than it would be sold for absent the misleading

2

representations and omissions." *Id*. ¶ 62.  Plaintiff brings the following claims in his individual capacity and on a behalf of two classes, a "Missouri Class" and a "Consumer Fraud Multi-State Class":

> Count I:  Violation of the Missouri Merchandising Practices Act (MMPA)
>
> Count II:  Violations of Consumer Fraud Laws of Oklahoma, South Dakota, and North Dakota.
>
> Count III: Breaches of Express Warranty, Implied Warranty of Merchantability, and the Magnuson Moss Warranty Act
>
> Count IV:  Negligent Misrepresentation
>
> Count V:  Fraud
>
> Count VI:  Unjust Enrichment
>
> Count VII:  Injunctive Relief

Defendants moved to dismiss all Plaintiff's claims for failure to state a claim. *See* Doc. [8].  After hearing argument on the motion, the Court dismissed Counts II, III, IV, and VII on the oral record and took the remaining claims under advisement.  *See* Doc. [26].  The Court also ordered the parties to file supplemental briefing on the MMPA claim.  *See* Docs. [27], [28].

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Determining if well-pled factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.  A plaintiff's allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  The well-pled facts must establish more than a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir.

3

2010), and "grant all reasonable inferences in favor of the nonmoving party," *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009)).  If a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).

### DISCUSSION

Plaintiff's remaining claims—MMPA, fraud, and unjust enrichment—successfully state claims upon which relief can be granted.

**I.      Plaintiff's MMPA claim states a claim upon which relief can be granted.**

The MMPA prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce."  Mo. Rev. Stat. § 407.020.1.  "To recover damages under the MMPA, a private plaintiff must allege and prove that she '(1) purchased merchandise from the defendant; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the MMPA."  *Hennessey v. Gap, Inc.*, 86 F.4th 823, 827 (8th Cir. 2023) (cleaned up) (quoting *Goldsmith v. Lee Enter., Inc.*, 57 F.4th 608, 615 (8th Cir. 2023)).

The 2020 amendments to the MMPA "place more stringent requirements on plaintiffs raising MMPA claims."  *Abbott v. Golden Grain Co.*, 677 F. Supp. 3d 940, 946 (E.D. Mo. 2023).  A plaintiff must now establish:

> (a) That the person acted as a reasonable consumer would in light of all circumstances;
>
> (b) That the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages; and
>
> (c) Individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty.

Mo. Ann. Stat. § 407.025.2.  And the MMPA allows a court to "dismiss a claim as a matter of law where the claim fails to show a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer."  *Id*. § 407.025.1.  That amendment "empower[s] courts to dismiss as a matter of law cases that previously may have made it past the motion-to-dismiss stage."  *Abbott*, 677 F. Supp. 3d at 946.

4

Plaintiffs alleging a violation of the MMPA must satisfy the particularity requirement of Rule 9(b). *See Hennessey*, 86 F.4th at 827 ("Claims alleging deceptive practices under the MMPA sound in fraud and are subject to Rule 9(b)'s heightened pleading standard."); *see also Goldman v. Tapestry, Inc.*, 501 F. Supp. 3d 662, 669 (E.D. Mo. 2020) ("However, because Rule 9(b)'s heightened pleading standard applies to MMPA claims, [the plaintiff] must state her claims with greater particularity to survive this motion to dismiss."). To satisfy Rule 9(b), "the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (citations omitted). In other words, the claim must identify the "who, what, where, when, and how" of the alleged fraud. *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003).

Defendant argues that Plaintiff's MMPA claim must be dismissed because it is preempted pursuant to the express preemption clause of the Federal Food Drug and Cosmetic Act (FDCA). Defendant also argues that Plaintiff has not plausibly alleged that the malic acid in the Product is artificial.

**A. To survive preemption, Plaintiff must plausibly allege that the malic acid in the Product functions as a flavoring agent.**

"The general law of preemption is grounded in the Constitution's command that federal law shall be the supreme Law of the Land." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015) (quotation omitted). Congress can preempt state law in the following three ways: "(1) expressly though statutory language like a preemption clause; (2) implicitly when a state law 'conflict[s] with' or stands as an obstacle to federal law; or (3) implicitly by 'occup[ying] a legislative field,' leaving no room for state law." *WinRed v. Ellison*, 59 F.4th 934, 941 (8th Cir. 2023).

The Federal Food, Drug, and Cosmetic Act expressly prohibits states from "directly or indirectly establish[ing] . . . any requirement for the labeling of food . . . that is not identical to" the federal requirements. 21 U.S.C. § 343-1(a)(3). Food and Drug Administration (FDA) regulations explain that "not identical" refers to any "[s]tate requirement [that] directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that: (i) Are not imposed by or contained in the applicable

5

provision (including any implementing regulation) of section 401 or 403 of the [FDCA]; or (ii) Differ from those specifically imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the [FDCA]." 21 C.F.R. § 100.1(c)(4).

Defendant maintains that Plaintiff's MMPA claim is preempted because he "seeks to impose a definition of 'artificial flavor[ ]' that differs from FDA's." Doc. [28] at 7. Defendant explains that FDA has approved malic acid for three purposes. *Id*. It can be used as a "flavoring agent," which is defined as a "substance[ ] added to impart or help impart a taste or aroma in food," 21 C.F.R. § 170.3(o)(12); a "flavor enhancer," which is defined as a "substance[ ] added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own," § 170.3(o)(11); or a "pH control agent," which is defined as a "substance[ ] added to change or maintain active acidity or basicity, including buffers, acids, alkalies, and neutralizing agents," § 170.3(o)(23). FDA defines "artificial flavor" as "any substance, *the function of which is to impart flavor*, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." § 101.22(a)(1) (emphasis added). If a food "contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor . . . , [and] the name of the characterizing flavor shall be accompanied by the word(s) 'artificial' or 'artificially flavored' . . . ." § 101.22(i)(2).

Because flavor enhancers and pH control agents do not "function . . . to impart flavor," they do not satisfy § 101.22(a)(1)'s definition of "artificial flavor." So, if Plaintiff alleges that the malic acid in the Product acts as a flavor enhancer or pH control agent, FDA regulations do not require that Defendant label the product "artificially flavored," and Plaintiff's claim is preempted, as it seeks to impose a labeling requirement that is not "identical to the requirement" set by FDA. 21 U.S.C. § 343-1(a)(3). If, however, Plaintiff alleges that malic acid acts as a flavoring agent—i.e., it is added to "impart or help impart a taste or aroma in food"—Plaintiff's claim is not preempted because Defendant would have been required by FDA to state that the Product is "artificially flavored." To survive preemption, then, Plaintiff must plausibly allege that the malic acid in the Product functions as a flavoring agent.

6

### B. Plaintiff has plausibly alleged that the malic acid in the Product functions as a flavoring agent.

Plaintiff claims that he has provided numerous supporting allegations for his claim that malic acids functions as a flavoring agent in the Product.  Those allegations include:

DL-Malic Acid . . . imparts the flavor of pineapple and coconut.  Doc. [1] ¶ 2.

In coconut and pineapple, malic acid and citric acid are the first and second predominant acids.  *Id*. ¶ 34.

In pineapples, malic acid provides its characteristic sour flavor.  *Id*. ¶ 35.

In coconuts, malic acid provides the characterizing sweetness and tanginess.  *Id*. ¶ 36.

In both of these tropical fruits, malic acid is central to their characteristic fruity . . . ."  ¶ 37 (sentence incomplete in original).

However, consumers are misled because the Product contains the artificial ingredient of "Malic Acid," which provides its pina colada or pineapple and coconut taste.  *Id*. ¶ 49.

DL-malic acid is central to the taste of pineapple and coconut, which is why its use in the Product goes beyond enhancing or improving its core pineapple and coconut taste.  *Id*. ¶ 56.

Since malic acid is central to the taste of coconuts and pineapples, adding artificial DL-malic acid imparts the fruity, tangy, and sweet flavor attributes these fruits, and when combined, a pina colada, is known for.  *Id*. ¶ 58.

Defendant contends that Plaintiff's allegations prove that his clam is implausible.  Defendant points to a chart in Plaintiff's Complaint showing that malic acid is the first or second predominant acid in 22 different fruits, including coconut, pineapple, apricots, grapes, limes, strawberries, and tamarinds.  *Id*. ¶ 34.  According to Defendant, "[t]he fact that malic acid is found in so many different fruits with vastly different flavor profiles makes it wholly implausible that malic acid is responsible for the characteristic taste or aroma of all of them."  Doc. [28] at 9.

The Court finds itself in agreement with the many district courts that have concluded that whether "malic acid acts as a flavoring agent, flavor enhancer, or a pH control agent in a particular product" is a "factual issue, to the extent it is disputed, [ ] not properly resolved at the motion to dismiss stage."  *Lozano v. Walmart, Inc.*, 2024 WL 412606, at *8 (C.D. Cal. Feb. 1, 2024); *see Hayes v. Gen. Mills, Inc.*, 2021 WL 3207749, at *3 (N.D. Ill. July 29, 2021) ("To reiterate, however, whether malic acid functions as a flavor, a flavor enhancer, or a PH control agent in a food product is a question of fact inappropriate for resolution on a motion to dismiss."); *Noohi v. Kraft Heinz Co.*, 2020 WL 5554255, at *4 (C.D. Cal. July 20, 2020)

7

("District courts to have considered whether a plaintiff has adequately alleged that malic acid acts as a flavoring agent, flavor enhancer, or a pH control agent in a particular product have concluded that the issue was a factual dispute not properly resolved at the motion to dismiss stage."); *Adams v. Kraft Heinz Co.*, 2022 WL 18776273, at *7 (M.D. Fla. Jan. 9, 2022) (whether malic acid functions as a flavoring agent or flavor enhancer is "ultimately a factual determination ill-deposed to resolution at this early stage"). To hold otherwise would put the Court in the inappropriate position of "second guess[ing] the truth of plaintiffs' allegations." *Lozano*, 2024 WL 412606, at *8 (quoting *Gitson v. Trader Joe's Co.*, 2014 WL 1048640, at *4 (N.D. Cal. Mar. 14, 2014)). Because Plaintiff's Complaint contains factual allegations that, if true, entail that the malic acid functions as a flavor in the Product, Plaintiff's MMPA claim survives preemption at the pleading stage.

### C. Plaintiff has plausibly alleged that the malic acid in the Product is artificial.

Defendant also argues that Plaintiff has not plausibly alleged that the malic acid in the Product is artificial. In his Complaint, Plaintiff alleges:

> Malic acid has two isomers, or arrangements of atoms, L-malic acid, and D-malic acid. Doc. [1] ¶ 38.
>
> L-malic acid occurs naturally in fruits such as pineapple and coconut, and is known for providing sweetness, tanginess, and tartness. *Id*. ¶ 44.
>
> D-malic acid does not occur naturally and is most commonly found as a racemic mixture of the D and L isomers, or DL-malic acid. *Id*. ¶ 45.
>
> DL-malic acid is synthetically produced from petroleum in a high-pressure, high-temperature, catalytic process involving chemical reactions and reagents. *Id*. ¶ 46.
>
> Consumers viewing the statements of "100% Natural Flavors" and "Piña Colada Flavored Soda With Other Natural Flavors" will expect the Product's taste is from natural flavoring ingredients. *Id*. ¶ 48.
>
> However, consumers are misled because the Product contains the artificial ingredient of "Malic Acid," which provides its pina colada or pineapple and coconut taste. *Id*. ¶ 49.
>
> That this malic acid was the artificial version is not disclosed to consumers on the ingredient list, but was determined through laboratory analysis performed by accepted standards. *Id*. ¶ 50.
>
> Instead, the Product used artificial DL-Malic Acid because it cost less and/or more accurately resembled the taste of pineapple and coconut. *Id*. ¶ 52.

Defendant claims that Plaintiff's "summary reference to this mysterious 'analysis,' without more, does not approach the level of particularity required under Rule 9(b)." Doc. [9] at 13. In support, Defendant cites a case from the Southern District of New York that "concerned virtually

8

identical allegations about 'artificial' malic acid in the piña-colada-flavored version of Fanta." *Hawkins v. Coco-Cola Co.*, 2023 WL 1821944, at *7 (S.D.N.Y. Feb. 7, 2023). There, the court held that plaintiff's "amorphous 'laboratory analysis'" was "a far cry from raising 'any factually substantiated allegations' that the Product contains artificial malic acid, rather than natural malic acid." *Id*. (quoting *Wynn v. Topco Assocs., LLC*, 2021 WL 168541, at *6 (S.D.N.Y. Jan. 19, 2021)). Defendant also cites other cases from the Southern District of New York to support its argument that Plaintiff's claim warrants dismissal because it failed to "explain who performed this 'analysis,' what 'accepted standards' were actually used, what the results were, or why those results led him to conclude that the malic acid in Fanta is 'artificial.'" *See Myers v. Wakefern Food Corp.*, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) ("Plaintiff claims that the Product was allegedly subjected to a laboratory test, but she fails to provide any details whatsoever about this laboratory test entailed."); *Santiful v. Wegmans Food Markets, Inc.*, 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022) ("This lab analysis contains no information as to the testing methodology, the date, time, or place of the testing, who conducted the testing, and what the exact product tested was. Without any information about the alleged lab analysis, Plaintiffs offer it as their only support that the Product is in fact made of artificial flavors."); *Hoffman v. Kraft Heinz Foods Co.*, 2023 WL 1824795, at *8 (S.D.N.Y. Feb. 7, 2023) ("And in an effort to substantiate the claim, Plaintiff again asserts—without any support—that amorphous 'laboratory analysis' concluded that the Product contained artificial malic acid instead of its natural form.").

But other courts have not required more detail to survive a motion to dismiss. *See, e.g., Degioanni v. The Kroger Corp.*, 2024 WL 5402310, at *7 (S.D. Tex. Nov. 5, 2024) ("Although Defendant cites several cases holding that allegations like Plaintiff's are insufficient, conclusory, and amount to no more than amorphous laboratory analyses of unspecified flavors . . . the Court finds that Defendant's arguments require more than what is necessary at the pleading stage . . . ."); *Gouwens v. Target Corp.*, 2022 WL 18027524, at *2 (N.D. Ill. Dec. 30, 2022) (rejecting defendant's argument that "[p]laintiff has not plausibly alleged that the Product contains artificial malic acid because she has not described the testing methodology of the laboratory analysis" as "misplaced at the pleading stage and requiring more would exceed federal pleading standards" (citing *Herron v. Meyer*, 820 F.3d 860, 863 (7th Cir. 2016) ('[A] complaint narrates a claim and need not supply the proof.'))); *McCall v. Public Super Mkts., Inc.*, 2023 WL 2362542, at *4 (M.D. Fla. Feb. 28, 2023) (relying on *Gouwens* to reject

9

defendant's argument that "absent allegations describing the 'testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc.,' Plaintiff has insufficiently alleged the ingredients of the Product"). Defendant's "demand[ ] to know extensive details about the mentioned laboratory testing . . . [is] more appropriate for discovery requests and not reason to find Plaintiff's allegations insufficient." *Degioanni*, 2024 WL 5402310, at *7 n. 8 (S.D. Tex. Nov. 5, 2024).

Plaintiff has alleged that "DL-malic acid is synthetically produced from petroleum in a high-pressure, high-temperature, catalytic process involving chemical reactions and reagents," Doc. [1] ¶ 46; that "a laboratory analysis performed by accepted standards" confirmed that the "malic acid" listed in the Product's ingredients is DL-malic acid, *id*. ¶ 50; and that Defendant uses "artificial DL-Malic Acid because it cost less and/or more accurately resembled the taste of pineapple and coconut," *id*. ¶ 52. The Court finds such allegations sufficient to survive a motion to dismiss. *See Degioanni*, 2024 WL 5402310, at *7 ("Plaintiff alleges that Defendant uses DL-malic acid in all of the Products and that 'testing by an independent third-party laboratory' confirmed that the 'malic acid' listed in the Products is DL-malic acid, and also explains how DL-malic acid is manufactured and used in the Products and why it is used in mass-produced food products—namely, that naturally occurring malic acid is expensive and rarely used in mass produced foods . . . . At this stage in the proceedings, Plaintiff's allegations are sufficient to meet federal pleading standards."); *Allred v. Kellogg Co.*, 2018 WL 1158885, at *2 (S.D. Cal. Feb. 23, 2018) (plaintiff's allegations discussing "the process to create artificial malic acid and alleg[ing] defendants use the artificial version of malic acid, 'd-l-malic acid,' in the product" were sufficient to survive a motion to dismiss as the allegations' "truthfulness is a summary judgment hurdle").

Because Plaintiff has plausibly alleged that the malic acid in the Product was an "artificial flavor," Plaintiff's MMPA claim states a claim upon which relief can be granted.

**II.     Plaintiff's unjust enrichment claim and fraud claim state claims upon which relief can be granted.**

Defendant also move to dismiss Plaintiff's unjust enrichment claim and fraud claim. In support of its argument that Plaintiff's unjust enrichment claim should be dismissed, Defendant relies on the same arguments it made in response to Plaintiff's MMPA claim. *See* Doc. [9] at 19 ("Plaintiff's unjust enrichment claim is derivative of his MMPA claim and fails for the same

reasons."). Thus, for the reasons stated in section I.B and I.C, Plaintiff's unjust enrichment claim is not subject to dismissal.

As for Plaintiff's fraud claim, Defendant argues that Plaintiff's allegations are insufficient to meet the heightened pleading standard of Rule 9(b). *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) ("[T]he complaint must plead the 'who, what, when, where, and how' of the alleged fraud." (quoting *United States ex rel. Joshi,* 441 F.3d at 556)). Plaintiff responds:

> The "who" was "The Coca-Cola Company." Compl. ¶ 71.
>
> The "what" was its piña colada flavored soda purporting to have "100% Natural Flavors." Compl. ¶ 1.
>
> The "where" and "when" was at "QuikTrip near Overland Plaza in 2022." Compl. ¶ 84.
>
> The "how" was by "contain[ing] the artificial ingredient of 'Malic Acid,' which provides its pina colada or pineapple and coconut taste." Compl. ¶ 49.

Doc. [17] at 18. Defendant counters that Plaintiff has not adequately pled the 'how' of Coca-Cola's purported fraud: "Plaintiff's conclusory allegation that malic acid is 'an artificial ingredient' that 'provides' Fanta's characterizing taste is facially insufficient to plead a fraud claim with particularity." Doc. [18] at 14-15. For the reasons stated in section I.B and I.C, that argument fails. Because Plaintiff has sufficiently pled the who, what, when, where, and how of the alleged fraud, such that Defendant can "respond specifically and quickly to the potentially damaging allegations," Plaintiff's fraud claim will not be dismissed. *United States ex rel. Joshi*, 441 F.3d at 556.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, Doc. [8], is **GRANTED** in part and **DENIED** in part. Counts II, III, IV, and VII are dismissed for the reasons stated on the oral record. *See* Doc. [26]. Counts I, V, and VI successfully state claims.

Dated this 26th day of March, 2025.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE